UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NEIL JACOBSEN,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER CURRAN, et al.,<br><br>Defendants. | CASE NO. 1:16-cv-1050-MJS (PC)<br><br>**ORDER DIRECTING CLERK'S OFFICE TO ASSIGN A DISTRICT JUDGE TO THIS MATTER**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS NON-COGNIZABLE CLAIMS**<br><br>**(ECF No. 11)** |

At the time of filing his first amended complaint, Plaintiff was a County inmate. He is proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. He has consented to Magistrate Judge jurisdiction. (ECF No. 5.)

On December 12, 2016, the Court screened Plaintiff's first amended complaint and concluded that it states cognizable Fourteenth Amendment claims for inadequate medical care against Defendants Curran, Dulces, and Does 1-11, as well as a cognizable First Amendment retaliation claim against Nurse Doe 7. (ECF No. 12.) Non-cognizable medical care claims against named and unnamed defendants were

dismissed with prejudice. Improperly joined claims were dismissed without prejudice to Plaintiff bringing them in a separate case.

Defendants Curran and Dulces appeared in the action and consented to Magistrate Judge jurisdiction. (ECF Nos. 28, 30.) Their motions for summary judgment for failure to exhaust administrative remedies and failure to state a claim are pending. (ECF Nos. 35, 38.)

Does 1 through 11 have not been identified or served.

I. **Williams v. King**

Federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence[.]" Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted). On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil claim. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court held that a Magistrate Judge does not have jurisdiction to dismiss a claim with prejudice during screening even if the plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, Defendants were not yet served at the time that the Court screened the first amended complaint and therefore had not appeared or consented to Magistrate Judge jurisdiction. Although Curran and Dulces subsequently consented, the Doe Defendants and the improperly dismissed Defendants did not. Because the Defendants had not consented at the time of screening, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in his previous screening order, he will below recommend to the District Judge that the non-cognizable claims be dismissed.

**II.	Findings and Recommendations on First Amended Complaint**

**A.	Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.	Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### C. Plaintiff's Allegations

Plaintiff is incarcerated at the Fresno County Jail where the acts giving rise to his complaint occurred. He names the following defendants: Officer Maldinado, Officer Curran, Nurse Dulces, Doctor Burnett, and Does 1-17. The Doe Defendants are nurses, doctors, and correctional personnel at the Fresno County Jail. They are described in more individual detail below.

Plaintiff's allegations may be summarized essentially as follows:

Plaintiff was booked into the Fresno County Jail in February 2016. Two days prior, Plaintiff had sustained a shattered elbow and had a metal plate and screws implanted in his elbow. At the time of booking, he was in a cast that wrapped his entire arm from his fingers to his shoulder.

At booking, Nurse Doe 1 cut off Plaintiff's cast on the ground that it was a security risk. Plaintiff was not allowed to see a doctor or go to the infirmary.

Once his cast was removed, Plaintiff refused to remove his street clothes to avoid being transported to a cell without first being seen by a doctor. Officer Curran and Correctional Officers Does 2, 3, and 4 came to Plaintiff's holding cell and ordered him to remove his clothes. Plaintiff showed them his arm and expressed his urgent need to see a doctor. They refused and instead wrestled Plaintiff to the dirty floor, held him down, and stripped him of his clothes. During the encounter, Plaintiff screamed in pain. Afterward, Nurse Doe 5 briefly examined Plaintiff's arm, but Plaintiff was not permitted to

4

see a doctor or go to the infirmary.

Plaintiff's elbow soon became red and began to leak pus. Correctional officers on Plaintiff's floor viewed his medical condition as an emergency and summoned medical care. Plaintiff was seen by Nurse Doe 6, who gave Plaintiff Motrin. She did not send Plaintiff to a doctor or to the infirmary.

Ten days later, Plaintiff appeared in Court with an extremely swollen arm. The judge noted the swelling and that Plaintiff appeared to be in pain. Plaintiff was released so that he could seek medical attention.

Plaintiff was arrested again approximately one week later. In booking, he explained to Nurse Doe 7 the circumstances regarding his arm and his prior release. Plaintiff threatened to sue the jail for cutting off his cast and he demanded to see a doctor. Out of spite, Nurse Doe 7 ordered officers to remove Plaintiff's eye patch, which he requires to prevent severe migraines. Plaintiff explained to Nurse Doe 7 that the eye patch was "doctor approved" and was so listed in the jail's computer alert system. Nonetheless, she took his eye patch and also removed it from the computer alert system. Plaintiff was not allowed to see a doctor for his elbow, which at the time was actively leaking pus.

Plaintiff eventually appeared in court where the judge ordered that a doctor examine Plaintiff's arm. A nurse transferred Plaintiff to the infirmary, where Dr. Burnett placed him on IV antibiotics. Dr. Burnett expressed surprise that Plaintiff's cast had been removed and stated that Plaintiff could have lost his arm if the infection had entered the bone. While in the infirmary, Plaintiff's dressings were changed daily and he saw a doctor every day.

One week later, Nurse Doe 8 removed Plaintiff's IV antibiotics and discharged him from the infirmary because the jail needed the bed space. Plaintiff still had an infection. The move was not approved by a doctor.

The next day, Plaintiff ran into Dr. Burnett on the elevator. Plaintiff expressed that he still was in extreme pain. Burnett stated that he couldn't control the moves made by other staff, but would take care of Plaintiff. He prescribed Plaintiff a one-week course of oral antibiotics and pain medication.

Plaintiff was released from jail a few days after finishing his medication. At that time, his arm was still leaking pus.

Plaintiff was arrested again a few days later. The police took Plaintiff directly to Fresno Community Hospital via ambulance. Plaintiff was diagnosed with a staph infection that had entered his bone and the hardware in his elbow. Plaintiff underwent surgery but not all of the hardware could be removed. His doctors ordered a six week course of IV antibiotics.

One week later, Plaintiff was transferred to Fresno County Jail. A PIC line was inserted to allow Plaintiff to continue to receive IV antibiotics. The PIC line was to remain in place for the entire six week course of treatment. However, two to three weeks later, Nurse Dulces removed the PIC line and Plaintiff was released. Dulces did not give Plaintiff any pain medication or antibiotics. He did not tell Plaintiff the date of his follow up appointment with the surgeon. He instructed Plaintiff to have the PIC line replaced as soon as possible.

Plaintiff soon was arrested again. A nurse in booking was familiar with Plaintiff and sent him directly to the infirmary, where the PIC line was replaced. After two to three weeks, the PIC line again was removed and Plaintiff again was released.

Plaintiff was arrested again the next day, June 30, 2016. The jail doctor told Plaintiff that he was resistant to the antibiotics. Plaintiff was referred to an outside surgeon to determine a course of treatment.

Plaintiff was taken to an outside clinic on August 1, 2016. His elbow was still leaking pus. He was given a two-week course of antibiotics and instructed to return in

two weeks to set up a possible surgery date.

When Plaintiff returned to the jail, Dr. Doe 9 refused to fill the prescriptions ordered by the outside doctor. Plaintiff remained in pain. He filed numerous medical requests without receiving a response.

On August 15, 2016, Plaintiff attended the nurse's line and saw Nurse Doe 10. Plaintiff alerted Nurse Doe 10 to his unfilled prescriptions. Nurse Doe 10 stated that he would check on Plaintiff's prescriptions and that Plaintiff would receive any prescribed medications that night. That night, Plaintiff received his antibiotics but not his pain medication.

On August 22, 2016, Plaintiff returned to the outside clinic. On August 30, 2016, he underwent surgery to remove the infected hardware. Following surgery, he was in extreme pain and received morphine. He expressed concern that his prescriptions would not be honored upon his return to the jail. The surgeon called the jail in front of Plaintiff and ordered Norco for pain and antibiotics.

When Plaintiff returned to the jail, Doctor Doe 11 gave Plaintiff his antibiotics but not his Norco prescription. Instead, Plaintiff was given Motrin. He experienced extreme pain. Doe 11 also did not order dressing changes. Plaintiff's dressing was not changed for five days. At that time it was red and swollen.

On September 9, 2016, Plaintiff saw Dr. Burnett, who prescribed pain medication. Shortly thereafter, Plaintiff was scheduled for release. He inquired about receiving medications upon his release and was told to go to CVS. Plaintiff did so, but was told that "the jail didn't have anything for [him]."

Plaintiff was arrested again on September 29, 2016. Unspecified Defendants called Plaintiff's probation officer who told them not to hold him on a violation unless he had committed a felony. The officers charged him with a "fake" felony in order to put a

probation hold on him.

At booking, Defendant Maldinado came to Plaintiff's holding cell to conduct a classification interview. A dispute arose. Maldinado returned with Does 12, 13, and 14 and demanded that Plaintiff remove his street clothes. Plaintiff refused and asked to talk to their supervisor. The four officers rushed into the cell and began to beat Plaintiff. They cuffed him behind his back and bashed his head on the floor. They left and returned with Sergeant Doe 15. They uncuffed Plaintiff and strapped him to a chair. Doe 15 filmed the encounter. Plaintiff remained strapped to a chair for eight hours. Maldinado and Does 12-15 did not allow Plaintiff to be examined by a doctor. Plaintiff had lumps on his forehead, a broken nose, a split eyebrow, a cracked tooth and bruised ribs. He was bleeding from his nose and brow.

Plaintiff declined to go to the hospital but asked that his pain medication be reinstated. A non-party nurse informed Plaintiff that his former pain prescription was still good, and that he would receive his medication and an ice pack once on his floor. However, Doctor Doe 16 did not provide Plaintiff his prescription or ice packs.

Over the next two weeks, Plaintiff experienced extreme pain from his elbow injury and the other injuries he sustained during his arrest. He made multiple medical requests to no avail. His cracked tooth began to abscess.

Eventually, Plaintiff saw Nurse Doe 17. She stated she would schedule him to see a doctor. She prescribed one week of motrin and stated that only a doctor could prescribe something stronger. She declined to send Plaintiff to the infirmary.

Plaintiff was never seen by a doctor. He eventually saw a dentist, who removed the cracked and abscessed tooth.

Plaintiff seeks money damages and injunctive relief in the form of specified medical care.

**D. Analysis**

**1. Improper Joinder of Defendants**

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 653 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff's inclusion in this action of claims against Defendant Maldinado and Does 12-17 does not comply with the rules regarding joinder of claims. These claims arise out of an incident of excessive force and related medical care. They are unrelated to Plaintiff's original claims regarding treatment of his elbow injury. Plaintiff may not pursue unrelated claims against unrelated defendants in this action.[1] These claims should be dismissed without prejudice to Plaintiff bringing them in a separate case.

**2. Inadequate Medical Care**

The standard applicable to a pretrial detainee's claim for inadequate medical care under the Fourteenth Amendment is presently not clear. In the past, such claims were subject to the same state of mind requirement as an Eighth Amendment violation, i.e., subjective and deliberate indifference to a substantial risk of serious harm. See Clouthier v. County of Contra Costa, 591 F.3d 1232 (9th Cir. 2010). However, that holding was called into question by the United States Supreme Court in a Fourteenth Amendment

---

[1] Plaintiff's claims against these Defendants arose in 2016. Thus it does not appear that Plaintiff will be prejudiced by the statute of limitations in bringing a separate suit based on these allegations. See Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015).

9

excessive force case, Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). Most recently, the Ninth Circuit extended the Kingsley rationale to a Fourteenth Amendment failure-to-protect claim. Castro v. Cty. of Los Angeles, No. 12-56829, 2016 WL 4268955, at *7 (9th Cir. Aug. 15, 2016) (en banc) (slip op). Although Castro did not expressly extend its holding to other Fourteenth Amendment violations, the Court nonetheless will apply the Castro standard to this conditions of confinement claim at the screening stage.

Accordingly, in order to proceed on a claim for inadequate medical care, Plaintiff must allege "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." Id. With respect to the third element, the defendant's conduct must be "objectively unreasonable." Id. (citing Kingsley, 135 S.Ct. at 2473).

The Court concludes that the following allegations against the following individuals are sufficient to allege "objectively unreasonable" conduct in violation of the Fourteenth Amendment.

- Nurse Doe 1 cutting off Plaintiff's cast and refusing to refer him to a doctor or the infirmary.
- Officer Curran and Correctional Officers Does 2, 3, and 4 for wrestling Plaintiff to the floor and holding him down despite knowledge of Plaintiff's injury.
- Nurse Doe 5 for refusing to refer Plaintiff to a doctor or the infirmary following the incident with Curran and Does 2-4.

- Nurse Doe 6 for refusing to refer Plaintiff to a doctor or the infirmary when his arm was red and leaking pus.
- Nurse Doe 7 for refusing to refer Plaintiff to a doctor or the infirmary when his arm was leaking pus, and for seizing Plaintiff's eye patch despite his medical need.
- Nurse Doe 8 for removing Plaintiff from IV antibiotics and discharging him from the infirmary when he still had an infection, solely based on a need for bed space.
- Nurse Dulces for removing Plaintiff's PIC line and discontinuing Plaintiff's antibiotics, contrary to the orders of Plaintiff's surgeon. See Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir.1999) (holding that "the state must provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply"); see also Lugo v. Senkowski, 114 F. Supp. 2d 111, 115 (N.D.N.Y. 2000) (holding that the State "has a duty to provide medical services for an outgoing prisoner who is receiving continuing treatment at the time of his release for the period of time reasonably necessary for him to obtain treatment on his own behalf" (internal quotation marks and citation omitted)).
- Dr. Doe 9 for refusing to provide Plaintiff antibiotics and pain medication as ordered by an outside clinic.
- Nurse Doe 10 or failing to provide Plaintiff pain medication as ordered by an outside clinic.
- Dr. Doe 11 for failing to provide Plaintiff pain medication and dressing changes as ordered by Plaintiff's surgeon.

Plaintiff does not stat a claim against Dr. Burnett. Dr. Burnett treated Plaintiff with antibiotics and, later, pain medication. There is nothing to suggest that this conduct was objectively unreasonable. Furthermore, Dr. Burnett stated that he was without authority to transfer Plaintiff back to the infirmary. Plaintiff's speculation that Dr. Burnett in fact had such power is insufficient to support a claim for relief.

Plaintiff complains that his PIC line was removed upon his release on two separate occasions. The first of these removals is attributed to Nurse Dulces and supports a cognizable claim, as stated above. The second is not attributed to any specific defendant. Plaintiff previously was advised of the requirement that he link each Defendant to a constitutional violation. He has not done so with respect to the second PIC line removal. Accordingly, he fails to state a claim for relief with regard to the second removal.

Likewise, Plaintiff complains that he was released in September 2016 and told he could obtain his medications at CVS. However, when he went to CVS, his prescription was not there. Again, he does not attribute this failure to the conduct of any particular defendant. He therefore fails to state a claim on this basis.

Plaintiff is permitted to proceed on a Fourteenth Amendment claim for inadequate medical care against Officer Curran, Nurse Dulces, and Does 1-11 on the bases stated above. Plaintiff is reminded that Doe Defendants cannot be served until they have been identified. It is Plaintiff's responsibility to identify these Defendants and to move to amend his complaint to substitute the Defendants' true names.

### 3.    First Amendment Retaliation

Plaintiff claims that Nurse Doe 7 seized his eye patch and removed the computerized alert regarding his patch after he threatened to file a lawsuit. This is sufficient to state a First Amendment claim for retaliation against Nurse Doe 7. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). ("Within the prison context, a viable

claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.")

### III. Conclusion and Recommendation

In sum, Plaintiff's first amended complaint states cognizable Fourteenth Amendment claims for inadequate medical care against Defendants Curran, Dulces, and Does 1-11. He also states a cognizable First Amendment retaliation claim against Nurse Doe 7. To the extent Plaintiff intends to state any other claims, they are either not cognizable as pled or are improperly joined in this action.

Because not all of the Defendants have appeared or consented to Magistrate Judge jurisdiction, the Clerk of Court is directed to assign a District Judge to this matter.

Furthermore, it is HEREBY RECOMMENDED that:

1. This action continue to proceed only on Plaintiff's cognizable Fourteenth Amendment claims for inadequate medical care against Defendants Curran, Dulces, and Does 1-11, and for First Amendment retaliation against Nurse Doe 7. Plaintiff's;
2. Plaintiff's improperly joined claims be dismissed with prejudice; and
3. Plaintiff's non-cognizable medical care claims be dismissed with prejudice for failure to state a claim.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: December 1, 2017  /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE