| | |
|---|---|
| MICHAEL NEIL JACOBSEN,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER CURRAN, et al.,<br><br>Defendants. | CASE NO. 1:16-cv-01050-LJO-MJS(PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO:**<br><br>**(1) GRANT IN PART AND DENY IN PART DEFENDANT CURRAN'S MOTION FOR SUMMARY JUDGMENT;**<br><br>(ECF No. 38)<br><br>**(2) DENY DEFENDANT GONZALEZ'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(ECF No. 35)<br><br>**FOURTEEN-DAY DEADLINE** |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Plaintiff is a former county inmate proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The action proceeds on Plaintiff's first amended complaint against Defendants Curran and Gonzalez for

1

inadequate medical care in violation of the Eighth Amendment of the United States Constitution. (ECF No. 11.)[1]

Before the Court are motions for summary judgment brought by Defendants Curran and Gonzalez on the ground that Plaintiff failed to exhaust his administrative remedies. (ECF Nos. 35, 38.)[2] Defendant Gonzalez alternatively seeks judgment on the pleadings under Fed. R. Civ. Proc. 12(c) on the ground that Plaintiff's complaint failed to state a claim for which relief may be granted. (ECF No. 35.) Plaintiff opposes the motions. (ECF Nos. 58, 59, 60) Defendants replied. (ECF Nos. 63, 64.) The matter is submitted. Local Rule 230(*l*).[3]

For the reasons set forth below, the undersigned will recommend that Defendants' motions be granted in part and denied in part as described herein.

## I.  Plaintiff's Allegations

Plaintiff's allegations may be summarized as follows.

Plaintiff was booked into the Fresno County Jail ("Jail") in February 2016. Two days prior, Plaintiff had had surgery on his elbow. At the time of booking, he was in a cast. Officer Curran and Correctional Officers Does 2, 3, and 4 ordered Plaintiff to remove his clothes. They wrestled Plaintiff to the dirty floor and stripped him of his clothes.

Plaintiff was arrested again later and was transferred to the Jail. A PIC line was inserted to allow Plaintiff to continue to receive IV antibiotics. The PIC line was to remain in place for the entire six week course of treatment. However, two to three weeks later, Defendant Nurse Gonzalez removed the PIC line and Plaintiff was released. Gonzalez did not give Plaintiff any pain medication or antibiotics. He did not tell Plaintiff the date of

---

[1] The operative complaint was deemed amended to substitute Defendant Ganiron for Does 1 and 5, Defendant Mangulabnan for Doe 6, Defendant Garcia for Doe 7, and Defendant Dr. Burnett for Does 9 and 11. (See ECF Nos. 66, 68.)  These Defendants have not yet been served. Does 2-4, 8, and 11 have not been identified. Only Defendants Curran and Gonzalez have appeared in the action.
[2] Defendants argue that summary judgment should be granted in favor of Defendants Garcia, Burnett, and Does 8 and 10.  However, those Defendants are not properly before the Court and have not moved for summary judgment. Only Defendants Curran and Gonzalez motions will be addressed here.
[3] Plaintiff has also filed a motion to compel. (ECF No. 37.) It does not bear on issues presented in the instant motions. It will be addressed in a separate order.

2

his follow up appointment with the surgeon. He instructed Plaintiff to have the PIC line replaced as soon as possible.

Plaintiff soon was arrested again. A nurse in booking was familiar with Plaintiff and sent him directly to the infirmary, where the PIC line was replaced. After two to three weeks, the PIC line again was removed by Defendant Gonzalez and Plaintiff again was released.

**II.     Factual Background**

The following facts are found to be undisputed unless otherwise noted.

**A.     Plaintiff's Grievances**

Plaintiff was in custody at the Jail during the following dates relevant to his claims:

    January 25 through February 3, 2016;

    February 15 through February 17, 2016;

    February 24 through April 6, 2016;

    April 20 through May 3, 2016;

    May 14 through May 28, 2016;

    June 10 through June 11, 2016;

    June 30 through September 25, 2016;

    September 29, 2016 through March 6, 2017;

    March 8 through March, 17, 2017;

    June 27 through July 18, 2017;

During that time Plaintiff submitted twenty-five grievances through the Jail grievance system. (ECF Nos. 35-2, 38-4, ¶¶ 12-36.) These grievances concern a variety issues including the health care that Plaintiff received at the Jail. No grievances relate to Plaintiff's allegations regarding Defendant's Curran and Gonzalez. (See ECF Nos. 35-2, 38-4, 58, 59, 60.)

**B.     Access to Grievance Forms**

Plaintiff states that he requested, but was not provided, a grievance form while he was in custody from February 15 to February 17. (ECF No. 60 at 3-4.) Defendant Curran

1 disputes this and states that Plaintiff has provided no evidence to support this assertion.
(ECF No. 63 at 3.)

**V.	Legal Standards**

　　**A.	Summary Judgment Standards**

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. Anderson, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Id. at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); see Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Devereaux, 263 F.3d at

1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to judgment. See Celotex, 477 U.S. at 323.

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's pleading is signed under penalty of perjury and the facts therein that are based on personal knowledge are evidence for purposes of evaluating Defendant's motion for summary judgment.

### B. Fresno County Jail Exhaustion Rules

A Fresno County Jail inmate may submit a grievance within fourteen calendar days after the event or decision or other condition of confinement they wish to challenge. (ECF Nos. 35-2, 38-4 ¶ 7, Ex. 1 at 16.)

Inmates are not precluded from submitting grievances beyond the fourteen day period, and grievances issued past the deadline can be considered if, at the sole discretion of the Jail, circumstances are deemed to warrant an extension. (Id. ¶ 8, Ex. 1 at 15.) Health issues necessary to an inmate's well-being may be grieved beyond the fourteen day period. (Id. ¶ 8, Ex. 2 at 26; ECF No. 60 at 11.) In addition, inmates are allowed to file multiple grievances regarding medical issues. (Id. Ex. 1 at 19.)

All grievances should be investigated and response provided advising whether the grievance has been sustained or not, the reasons therefore, and the relief, if any, granted. (Id. Ex. 1 at 15.) The inmate may appeal the initial grievance within 5 calendar days after receiving the grievance response. (Id. ¶ 10, Ex. 1 at 22.) Once the bureau commander issues a decision on the appeal, the grievance process has been exhausted. (Id.)

### C. Exhaustion under Prison Litigation Reform Act ("PLRA")

Under the PLRA, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90. To properly exhaust, an inmate must comply with the grievance procedures rule and deadlines of the institution where he is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007).

Under the PLRA, a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (quoting Griffin, 557 F.3d at 1120). The grievance "need not include legal terminology or legal theories," because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). The grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Jones, 549 U.S. at 219 (citations omitted). The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also Sapp, 623 F.3d at 824 ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.").

The Ninth Circuit has recognized that the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." See Sapp, 623 F.3d at 824; Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010). An inmate may be excused from exhaustion if he establishes (1) that he actually filed a grievance that, if pursued through all levels of administrative appeals, would exhaust the claim, and (2) that prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations. Sapp, 623 F.3d at 823-24.

Prison officials may not render the appeals process unavailable through error or misconduct and then take advantage of the prisoner's failure to complete the process. See Sapp, 623 F.3d at 823 (improper screening and/or processing of an inmate's administrative grievance "renders administrative remedies 'effectively unavailable'") (internal citations omitted). "[A]ffirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." Albino, 697 F.3d at 1034. See also McBride v. Lopez, 807 F.3d 982, 984 (9th Cir. 2015) (finding that a threat can render an administrative remedy unavailable).

Exhaustion of administrative remedies may be deemed complete, despite the inmate's failure to comply with a procedural rule, if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); e.g., Id. at 659 (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

**V.  Analysis**

The facts of this case are somewhat complicated given Plaintiff's custody history-- ten incarcerations and releases during the period relevant to this action. For some, but not all, of Plaintiff's claims, he was released before he was able to file a timely grievance. Plaintiff was again in custody when he filed the operative complaint. (See ECF No. 11.)

Defendants move for summary judgment on the ground that Plaintiff did not exhaust available administrative remedies on his claims.

Plaintiff argues that he could not exhaust because he was released from custody before he could grieve some of his claims, even though he was later re-incarcerated. Plaintiff is arguing that remedies were not available to him when he was out of custody

**A.     Availability of Administrative Remedies after Release**

As an initial matter, Plaintiff is subject to the exhaustion requirements of the PLRA. Jackson v. Fong, 870 F.3d 928, 937 (9th Cir. 2017) (the plaintiff's incarceration status when he filed the operative complaint is what determines whether the exhaustion requirements of the PLRA apply); see also Smedley v. Reid, No. 08cv1602-BTM (BLM), 2009 U.S. Dist. LEXIS 124278 (S.D. Cal. Sep. 29, 2009) (holding that prisoner who had filed a grievance, was released before the grievance was exhausted, and then re-incarcerated before filing suit was subject to the exhaustion requirements of the PLRA); McCullough v. Yates, No. 1:10-cv-01465 LJO JLT (PC), 2011 U.S. Dist. LEXIS 19244, at *9 (E.D. Cal. Feb. 28, 2011) (inmate who was paroled and then re-incarcerated before filing an action was required to exhaust administrative remedies).

However, while Plaintiff is required to exhaust available administrative remedies, he argues that they were not available to him during periods in which he was not in custody.

The Ninth Circuit has not specifically ruled on whether the release of an inmate from a particular institution renders administrative remedies at that institution unavailable. Other courts that have considered the issue, and the similar issue of transfer to a new institution, have focused on whether the relevant procedures of the particular institution render the administrative remedies unavailable. See Pauls v. Green, No. 4:08-cv-00337-BLW, 2011 U.S. Dist. LEXIS 131528, at *7 (D. Idaho Nov. 14, 2011) (noting, in the context of transfer, that the "analytical starting point is the . . . jail's regulations").

Courts have considered whether the institution has explicit procedures allowing for grievances to be filed in similar circumstances. See e.g., Flournoy v. Navarro, No. CV 05-7708 PA (PPM), 2008 U.S. Dist. LEXIS 120742, 2008 WL 4184650, at *7 (C.D. Cal. Sept. 10, 2008) ("[A]dministrative remedies relating to her grievance at the Jail were indisputably still 'available' to her, in that under Jail policy, there is no time limit on filing and appealing grievances, even after release."); Howard v. Baca, No. CV 10-5081-JFW (OP), 2011 U.S. Dist. LEXIS 132553, 2011 WL 5570086, at *5 (C.D. Cal. Sept. 27, 2011) (holding that plaintiff who was transferred out of county jail was still required to exhaust administrative remedies because it was the jail's "policy to treat complaints from released inmates according to the same guidelines, requirements, and procedures as inmates in custody"). Courts have also considered evidence of grievances being accepted under similar circumstances. See e.g., Napier v. Laurel Cty., 636 F.3d 218, 224 (6th Cir. 2011) ("noting that, "[m]ost powerfully, the defendants submitted evidence that a different prisoner has, in fact, filed a grievance . . . while incarcerated elsewhere in the state.").

Defendants have the burden of providing evidence that remedies were available in the context of the jail's procedures and the inmate's circumstances. See e.g., English v. Clark Cty. Jail, No. C14-5328 RBL-JRC, 2015 U.S. Dist. LEXIS 49159, at *6 (W.D. Wash. Jan. 29, 2015) (finding that release rendered administrative remedies unavailable because defendants made no showing that administrative remedies were available); Wright v. Smith, No. 1:10-cv-00011-AWI-GSA-PC, 2013 U.S. Dist. LEXIS 100815, at *22 (E.D. Cal. July 18, 2013) (finding that defendants did not meet their burden to show remedies were available where they had provided no evidence that plaintiff had means to continue an appeal upon transfer).

The issue thus depends on whether the evidence submitted by Defendants shows that a remedy was available to Plaintiff. In this regard, Defendants provide the declaration of Lt. Porter, the Jail's Inmate Grievance Procedure, and grievances that Plaintiff had submitted.

The evidence provided by Defendants is sufficient to show that remedies were available to Plaintiff where he had been released but then re-incarcerated within the time allowed for filing a grievance (within 14 days of the incident grieved). (ECF Nos. 35-2, 38-4 ¶ 7, Ex. 1 at 15). In addition, the grievances submitted by Defendants show the Jail had a policy of accepting grievances when there was a gap in custody and Plaintiff used grievance procedures on his return to grieve issues that had happened in previous periods of custody. (See Id. at 56-57, 74-75). In short, the Jail had an explicit policy that allowed for grievances to be accepted within fourteen days even if they arose during a prior period of incarceration. The evidence shows that when inmates are released from custody but then incarcerated again within the time for filing a grievance and file a grievance regarding prior periods of incarceration that Jail administrators can consider the grievance as timely and provide a response on the merits. This is sufficient for Defendants to meet their burden of showing that administrative remedies were available to Plaintiff when he was released from custody but then incarcerated again within fourteen days.

In light of that finding, the Court examines Defendants' failure to exhaust motions as it regards each Defendant.

### 1. Defendants Curran

Defendant Curran argues that Plaintiff did not exhaust available remedies in regards to his claims against Defendant Curran.[4]

Plaintiff alleges that his claim against Curran arose during his February 15 arrest and booking.[5] Plaintiff was released on February 17 and placed in custody again from

---

[4] The events involving Defendant Curran also occurred during the same period of incarceration as those involving Defendants Ganiron, Mangulabnan and Does 2-4. The Court does not address summary judgment as it relates to these Defendants except to note that the parties should expect the same result if a summary judgment motion on exhaustion grounds were filed by any of these Defendants.

[5] In the operative complaint Plaintiff indicates that he was released ten days after the alleged incident (see ECF No. 11 at 7). However, in his opposition to Defendants' motions, Plaintiff now indicates that he was released forty-eight hours after this took place. (See ECF No. 60 at 3-4.) Defendant Curran does not dispute Plaintiff's statements regarding the change in timeline. (See ECF No. 63.)

February 24 to April 6, 2016. A timely grievance would have needed to be filed by February 29. Plaintiff filed no grievances during this time period.

Plaintiff argues that he could not submit a grievance because he was released on February 17, before he was able to submit a grievance. Defendant Curran responds that Plaintiff was re-arrested on February 24 and could have filed a grievance between February 24 and February 29.

Plaintiff was in custody within the time period in which a grievance could have been timely filed. As noted, Defendants evidence shows that grievances filed within fourteen days are accepted regardless of a gap in custody between the event and the filing. Thus, Plaintiff had administrative remedies available to him.

Plaintiff filed other appeals during 2016-2017, but that none addressed the conduct of Defendant Curran. Defendant Curran has thus carried his burden to demonstrate that there were available administrative remedies for Plaintiff and that Plaintiff did not properly exhaust those remedies. Since Defendant met his initial burden, the burden shifts to Plaintiff to come forward with evidence that something in his particular case made the existing administrative remedies effectively unavailable to him. See Albino, 747 F.3d at 1172.

Plaintiff makes three arguments to this effect: (1) he did not know it was possible to grieve officer misconduct; (2) he asked for a grievance form and did not receive one; and (3) he was released from jail before he could file a grievance.

Plaintiff's argument that he was ignorant of the grievance process is not sufficient to demonstrate that remedies were effectively unavailable to him. Albino, 697 F.3d at 1037 (9th Cir. 2012) (noting that ignorance of the administrative remedies alone does not excuse exhaustion). Similarly, Plaintiff's belief that attempting the process would be futile does not indicate that remedies were effectively unavailable to him. Booth, 532 U.S. at 741 n.6 (futility is not an exception to the requirement to exhaust). The handbook that Jail inmates receive, and that Plaintiff attached as an exhibit to his opposition, indicates that inmates may "appeal and have a grievance resolved relating to any

condition of confinement, including but not limited to medical care, classification actions, program participation, telephone, mail, visiting procedures, food, and clothing or bedding." (ECF Nos. 35-2, 38-4 at 26, 60 at 11.) (emphasis in original). This shows the Jail had an explicit procedure for submitting complaints regarding any condition of confinement; neither Plaintiff's ignorance of the process, nor his belief in its futility, satisfy his burden of showing that the process was incapable of grieving the events he complains of.

Plaintiff also argues that while he was in custody from February 15 to February 17 he complained to staff and asked for a grievance form, but did not receive one. Defendant Curran responds that Plaintiff's statements are conclusory and unsupported. However, allegations provided under oath at the summary judgment stage are not subjected to credibility determinations and are accepted not as conclusions, but as facts that could be entered into evidence. See Liberty Lobby, 477 U.S. at 255; S.E.C. v. Phan, 500 F.3d 895, 909 (9th Cir. 2007). Such statements may be sufficient to establish a genuine issue of material fact if, as here, they are based on personal knowledge and state facts that could be offered into evidence, rather than mere conclusions. S.E.C., 500 F.3d at 909. These criteria being met, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255. Plaintiff need not here corroborate his assertion. S.E.C., 500 F.3d at 909. Therefore, Plaintiff's statement that he attempted and was unable to submit a grievance during the period of custody from February 15 to February 17 is accepted as fact for purposes of this motion and all inferences from that are drawn in his favor.

In order for remedies to be unavailable Plaintiff must demonstrate that officials were consistently unwilling to provide him grievances or that he otherwise lacked the opportunity to file a grievance within the time limits. See Albino, 747 F.3d at 1173 (noting that a remedy may be unavailable if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing a grievance"); Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (administrative remedies may be effectively

unavailable where circumstances render the prisoner unable to initiate the grievance process in a timely manner); Ross, 136 S. Ct. at 1859 (providing that if officials are "unable or consistently unwilling to provide any relief" then remedies may be effectively unavailable).

Here, the fact that Plaintiff did not have access to a remedy from February 15 to February 17 is not sufficient to meet his burden of demonstrating that prison officials were consistently unable or unwilling to provide relief within the time limits for filing a grievance. See Ross, 136 S. Ct. at 1859; Albino, 747 F.3d at 1173. The time limit for filing a grievance expired on February 29, and Plaintiff was in custody from February 24 to April 06, 2016.

This leads to Plaintiff's final argument: that he was unable to submit a grievance after he was released on February 17. However, Plaintiff was re-arrested on February 24. Plaintiff submits no evidence to indicate why he could not have filed the grievance while in custody after February 24. He submits no evidence that he attempted to submit a grievance and was denied the opportunity. Indeed Plaintiff filed grievances on other issues following a gap in custody and they were accepted. (See ECF Nos. 35-2, 38-4 at 56-57, 74-75.) Thus, the documents before the Court reflect that Plaintiff had administrative remedies available to him that he chose not to pursue.

Therefore Defendant Curran's motion for summary judgment should be granted in relation to Plaintiff's claims against Defendant Curran.

### 2. Defendant Gonzalez

Defendant Gonzalez argues that Plaintiff did not exhaust his remedies as to him. In support, Defendant Gonzales submits evidence showing that Plaintiff did not file any administrative claim relating to him.

However, Defendant Gonzalez has not met his burden of demonstrating that remedies were available to Plaintiff. The situation involving Defendant Gonzalez differs from the events of February 15-17, 2016, described above. There, Plaintiff was clearly in custody during at least some portion of the time period in which the filing of a grievance

would have been timely. Here, however, it is unclear whether Plaintiff was in custody during any time periods in which a grievance complaining of Defendant Gonzalez' conduct would have been timely filed.

The exact dates of the alleged events involving Defendant Gonzalez are unclear. Plaintiff alleges that sometime in April/May of 2016 Defendant Gonzalez twice removed a PIC line contrary to doctor's orders and immediately prior to Plaintiff's release from custody. (See ECF No. 69.)

During April/May of 2016 Plaintiff was released from Jail on three dates: April 6, May 3, and May 28. If Defendant Gonzalez' alleged conduct occurred on April 6, a timely grievance would need to be filed by April 20. Plaintiff was arrested again on April 20. If the event took place on May 3, it would need to be grieved by May 17. Plaintiff was arrested again on May 14. And if it happened on May 28, it would need to be grieved by June 11. However, Plaintiff was not in custody again until June 30. (See ECF Nos. 35-2, 38-4 ¶ 4) Since the dates of Plaintiff's allegations are uncertain, it is unclear whether Plaintiff was in custody during the time in which the filing of a grievance would have been timely. Construing facts in the favor of the Plaintiff, it is assumed that for at least one, and possibly both, of the events involving Defendant Gonzalez, Plaintiff was released from custody and not incarcerated again in time to file a timely grievance.

Defendant Gonzalez has submitted no evidence that remedies were available to Plaintiff when he was not in custody. There is no Jail procedure that addresses this issue. Jail policies indicate that a grievance submitted past fourteen days is considered abandoned. (ECF Nos. 35-2, 38-4 ¶ 7, Ex. 1 at 15). There are no grievances in the record that would indicate that issues could be grieved when inmates are no longer in custody. Accordingly, Defendant Gonzalez has not met his burden of showing that administrative remedies where available to Plaintiff. See English, No. C14-5328 RBL-JRC, 2015 U.S. Dist. LEXIS 49159, at *6 (finding that release rendered administrative remedies unavailable when there was no evidence indicating it was available); Pauls, No. 4:08-cv-00337-BLW, 2011 U.S. Dist. LEXIS 131528, at *10 (finding that where a jail

policies are "vague or unclear" then prisoners are not required to attempt to grieve them to find out if they are available).

Therefore Defendant Gonzalez' motion for summary judgment for failure to exhaust administrative remedies should be denied.

**VI.    Motion for Judgment on the Pleadings**

Defendant Gonzalez also argues that Plaintiff's complaint fails to state a claim and requests a judgment on the pleadings under Federal Civil Procedure Rule 12(c).

Federal Civil Procedure Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal modifications omitted). When deciding a Rule 12(c) motion, the court must assume the truthfulness of the material allegations in the complaint, and all inferences reasonably drawn from these allegations must be construed in favor of the responding party. See Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989). Thus, judgment may be granted under Rule 12(c) only if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. See Fajardo v. County of L.A., 179 F.3d 698, 699 (9th Cir. 1999). In consequence, "[a]nalysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez, 683 F.3d at 1108 (internal quotation marks, internal citations omitted).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6) — and therefore also pursuant to Rule 12(c) — a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "In sum, for a complaint to survive a motion to dismiss [under Rule 12(c)], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 970 (9th Cir. 2009), citing Iqbal, 129 S. Ct. at 1949.

Plaintiff's complaint contains sufficient allegations that, if taken as true, would entitle Plaintiff to a legal remedy. As a pretrial detainee in order to state a legal claim, Plaintiff must allege that: "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." Castro v. Cty. of L.A., 833 F.3d 1060, 1071 (9th Cir. 2016) (citing Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015)). With respect to the third element, the defendant's conduct must be "objectively unreasonable." Id. "[O]bjective reasonableness turns on the facts and circumstances of each particular case." Kingsley, 135 S. Ct. at 2473.

Here, Plaintiff alleges that Defendant Gonzalez removed his PIC line and discontinued Plaintiff's antibiotics against the orders of Plaintiff's doctor. This is sufficient to find that Plaintiff was at risk of serious harm, Defendant Gonzalez did not take reasonable measures to abate that risk, and that this caused Plaintiff injuries. See Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir.1999) (holding that "the state must provide an outgoing prisoner who is receiving and continues to require medication with a

supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply"); see also Lugo v. Senkowski, 114 F. Supp. 2d 111, 115 (N.D.N.Y. 2000) (holding that the State "has a duty to provide medical services for an outgoing prisoner who is receiving continuing treatment at the time of his release for the period of time reasonably necessary for him to obtain treatment on his own behalf" (internal quotation marks and citation omitted)).

Accordingly Defendant's Gonzalez motion for a judgment on the pleadings under Rule 12 (c) should be denied.

## VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Curran's motion for summary judgment (ECF Nos. 38) for failure to exhaust administrative remedies be GRANTED IN PART;
2. Summary judgment be entered in favor of Defendant Curran;
3. In respect to all other defendants Defendant Curran's motion should be denied; and
4. Defendant Gonzalez's motion for summary judgment and, alternatively, for judgment on the pleadings, (ECF No. 35) should be DENIED.

The findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.

Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: April 6, 2018 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE